In re ESTATE OF CHARLES EDWARD ZENKUS, Deceased (Joseph Zenkus, Petitioner and Cross-respondent-Appellant v. Kathleen Zenkus, Respondent and Cross-petitioner-Appellee).

Second District   No. 2—03—0082

Opinion filed March 12, 2004.

Michael F. Zimmerman, Russell M. Barnett, Elena B. Penick, and Richard D. Skelton, all of Raysa & Zimmermann, Ltd., of Park Ridge, for appellant.

Antonio M. Romanucci and Christopher P. Carr, both of Romanucci & Blandin, of Chicago, and Blake Austin Culver and Richard W. Culver, both of Richard W. Culver, Ltd., of Barrington, for appellee.

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

Petitioner and cross-respondent, Joseph Zenkus (petitioner), appeals the judgment of the circuit court of McHenry County denying his petition for letters of administration for the estate of decedent, Charles Edward Zenkus, and granting the cross-petition for letters of administration of respondent and cross-petitioner, Kathleen Zenkus (respondent), decedent's ex-wife. We affirm.

On February 11, 1995, decedent and respondent were married. On July 20, 1996, their son was born. In December 1996, decedent and respondent separated. On October 12, 1999, they were divorced, with a judgment of dissolution that incorporated a marital settlement agreement being entered on that date. The settlement agreement provided:

"13.3 *Waiver of Estate Claim*: Except as herein otherwise provided, each of the parties hereto hereby wavies [sic] and relinquishes all rights to act as administrator or administrator with the will annexed of the estate of the other party, and each of the parties does further relinquish all rights to inherit by intestate succession any of the property of which the other party may die seized or possessed, and should either of the parties hereto die intestate, this agreement shall operate as a relinquishment of all right of the surviving party hereafter to apply for letter [sic] of administration in any form, and the estate of such deceased party, if he or she dies intestate, shall decend [sic] to the heirs at law of such deceased party, in the same manner as though the parties hereto had never been married, each of the parties hereto respectively reserving the right to dispose, by testament or otherwise, of hos [sic] or her respective property in any way that he or she may see fit, without any restriction or limitation

whatsoever; provided, however, that nothing herein contained shall oprate [*sic*] or be construed as a waiver or release by either party of the obligations of the other to comply with the terms of this agreement."

In addition, the marital settlement agreement provided that respondent was to have sole care, custody, and control of the minor child, and that the child would reside with respondent.

On September 4, 2002, decedent was killed in an automobile accident. As decedent did not prepare a will following his divorce, he died intestate. After decedent's death, his brother, petitioner, filed a petition for letters of administration, seeking to be appointed as administrator of decedent's estate. Respondent filed a cross-petition, in her capacity as guardian of the minor child, for letters of administration, seeking to appoint a bank as the administrator of decedent's estate.

On January 7, 2003, the trial court heard argument on the pending petition and cross-petition. The trial court granted respondent's cross-petition and struck petitioner's petition, finding that the provision of the marital settlement agreement waiving one spouse's right to administer the other spouse's estate applied only to the spouse individually and not in some other capacity, such as guardian of the couple's child.

Petitioner moved the trial court for a stay of its order pending appeal, which the trial court denied. On January 22, 2003, petitioner filed a timely notice of appeal.

On appeal, petitioner contends that the trial court erred in denying his petition for letters of administration. Petitioner argues that the waiver of estate claim provision of the marital settlement agreement precludes respondent from applying for letters of administration in any capacity, either individually or as a representative. Petitioner argues that, when the marital settlement agreement is properly interpreted, respondent has surrendered her right to apply for letters of administration in the representative capacity of guardian of the couple's minor child, as well as in any other capacity. We disagree.

■ As this case involves the construction of the marital settlement agreement, we begin our analysis there. General rules of contract interpretation apply to the interpretation of a marital settlement agreement. *In re Marriage of Sweders*, 296 Ill. App. 3d 919, 922 (1998). The cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties. *Sweders*, 296 Ill. App. 3d at 922. The language employed in the contract or marital settlement agreement is the best indication of the parties' intent. *Sweders*, 296 Ill. App. 3d at 922. The interpretation of a marital settlement agreement presents a

question of law, which we review *de novo*. *Sweders*, 296 Ill. App. 3d at 922.

Petitioner points specifically to two phrases in the waiver of estate claim at issue: (1) each party "hereby waives and relinquishes all rights to act as administrator" of the other's estate; and (2) "should either of the parties [to this marital settlement agreement] die intestate, this agreement shall operate as a relinquishment of all right of the surviving party hereafter to apply for letters of administration in any form." Petitioner argues that these phrases evidence a clear and unambiguous intent that both parties agreed that the survivor would not interfere in the estate of the deceased party. Nevertheless, it is not clear from these phrases that the parties contemplated and incorporated the instant factual situation into their agreement. In other words, we must determine whether the parties meant to foreclose their ability, in a representative capacity, to apply for letters of administration, or to nominate an administrator.

Petitioner attempts to clinch his argument by pointing to the release clause of the marital settlement agreement. We directly quote petitioner's argument to illustrate precisely where petitioner's contentions fail:

"As a general proposition, it is safe to say that no one wants their ex-spouse wielding control over the administration of their estate, which is why the [marital settlement agreement] provides:

'*To the fullest extent by law permitted to do so* \*\*\* each of the parties does hereby *forever relinquish, release, waive all rights to* or against the property and assets of the other, real personal or mixed, *or his or her estate*, whether now owned or hereafter *in any manner acquired* by the other party, or whether in possession or in expectance, and whether vested or contingent.' [Citation.]

In addition, because this waiver was made on behalf of each party and 'his or her heirs,' the waiver cannot simply be dismissed on the grounds that it is being asserted on behalf of [respondent's] heirs, namely her son. The [marital settlement agreement] expressly states that:

'[E]ach party further covenants and agrees for himself or herself, *his or her heirs*, personal representative and assigns, that neither of them will at any time hereafter sue the other, *or his or her heirs, personal representatives* and assigns, for the purpose of enforcing any and all of the *rights relinquished under this agreement*. \*\*\*' [Citation.]''
(Emphases in original.)

While petitioner quotes at length from the release clause, he omits from the quoted material the very provision that, in our view, helps to

illuminate the intent of the parties to the marital settlement agreement. The release clause provided:

"To the fullest extent by law permitted to do so, and except as herein otherwise provided, each of the parties does hereby forever relinquish, release, waive and forever quit claim and grant to the other, his or her heirs, personal representatives and assigns, all tights [sic] to maintenance, alimony, dower, inheritance, descent, distribution, community interest and all other right, title, claim interest and estate as husband and wife, window [sic] or widower, or otherwise *by reason of the marital relations existing between said parties hereto*, under any present or future law, or which he or she otherwise has or might have or be entitled to claim in, to or against the property and assets of the other, real, personal, or mixed, or his or her estate, whether now owned or hereafter in any manner acquired by the other party, or whether in possession or in expectancy, and whether vested or contingent." (Emphasis added.)

In construing a contract or marital settlement provision, the court is to ascertain and give effect to the intent of the parties. *Cress v. Recreation Services, Inc.*, 341 Ill. App. 3d 149, 169 (2003). When interpreting the contract, the court is to consider the document as a whole, and not merely focus on isolated portions. *Cress*, 341 Ill. App. 3d at 170.

■ The foregoing quoted passage reveals why petitioner's argument fails. Contrary to petitioner's contention, the parties' intent is illuminated by the phrase, "by reason of the marital relations existing between said parties hereto." From the plain language of the release clause, we hold that the parties intended that the agreement apply to each other individually and only in capacities arising out of the marital relation that was being dissolved.

Further, considering the marital settlement agreement as a whole, and particularly, when viewing the release provision in conjunction with the waiver of estate claims provision, we see that the parties intended to limit only their individual capacities to apply for letters of administration. They did not intend to limit the ability of the survivor to apply for letters of administration of the deceased's estate in a capacity that does not arise out of the marital relation between respondent and decedent. Thus, as respondent applied for letters of administration as guardian of the couple's child, the capacity in which she applied did not arise out of the marital relation between respondent and decedent. As a result, respondent's action was not prohibited by the marital settlement agreement.

This case presents an issue of first impression in Illinois. Aside from the textual support identified in our analysis of the marital settle-

ment agreement, there also is support from other jurisdictions for our reading of the marital settlement agreement. Where there is no Illinois authority on a particular issue, we look to the determinations of the courts of foreign jurisdictions to provide persuasive authority for our analysis of the issue. *Cooper v. Hinrichs*, 10 Ill. 2d 269, 275 (1957); *In re Marriage of Raski*, 64 Ill. App. 3d 629, 633 (1978).

In *Estate of Nicoll v. Nicoll*, 79 Cal. App. 2d 48, 49, 179 P.2d 95, 95 (1947), the decedent had left a will but did not nominate an executor. The decedent's ex-wife (there was an interlocutory order of divorce, but no final order) sought letters of administration as the guardian of the child of her marriage with the decedent. The decedent's brother opposed the ex-wife and sought issuance of letters of administration in his own behalf. *Nicoll*, 79 Cal. App. 2d at 49, 179 P.2d at 96. In the property settlement agreement, the decedent and the ex-wife waived their rights to act as administrator of the other's estate. *Nicoll*, 79 Cal. App. 2d at 50, 179 P.2d at 96. The court held :

"Under the provisions of the property settlement agreement [the ex-wife] individually waived her right to act as administratrix. Such waiver, however, is not to be construed as a waiver by her in her representative capacity, as guardian of the minor, of his right, if any, to have letters of administration granted to her as his guardian." *Nicoll*, 79 Cal. App. 2d at 52, 179 P.2d at 98.

In *Estate of Porrata*, 89 Misc. 2d 663, 664, 392 N.Y.S.2d 221, 222 (1977), the petitioner, who was the decedent's ex-wife, sought to vacate limited letters of administration issued to the decedent's mother. The decedent died intestate, and his sole distributee was his minor child, of whom the petitioner was the guardian. *Porrata*, 89 Misc. 2d at 664, 392 N.Y.S.2d at 222. As part of the settlement agreement, the petitioner waived her rights "to be administrator or executor of [the decedent's] estate." *Porrata*, 89 Misc. 2d at 664, 392 N.Y.S.2d at 222. The court held that the waiver was limited to the petitioner's individual right to letters of administration, and did not extend to her status as the representative of the minor child. *Porrata*, 89 Misc. 2d at 665, 392 N.Y.S.2d at 223. The court noted that the minor was the only interested person in the decedent's estate and that the petitioner was not otherwise ineligible to serve as a fiduciary in the matter. *Porrata*, 89 Misc. 2d at 665, 392 N.Y.S.2d at 223. The court also questioned whether the decedent's mother had standing to challenge the petitioner's right to receive letters of administration in her representative capacity as guardian of the minor child. *Porrata*, 89 Misc. 2d at 665, 392 N.Y.S.2d at 223.

Last, in *In re Estate of Williams*, 153 N.E.2d 727 (Probate Ct. Ohio 1958), the decedent's brother sought to vacate the appointment of the

decedent's estranged wife as administrator of his estate. The estranged wife had executed a separation agreement in which she waived "any right which *** she may have to administer the estate of the other party upon the death of such other party." *Williams*, 153 N.E.2d at 727. The court held that, because the estranged wife had applied for letters of administration as guardian of her minor children, the waiver in the settlement agreement did not preclude her appointment as administrator. *Williams*, 153 N.E.2d at 728.

Thus, in several instances, under factually similar situations, courts have interpreted waiver clauses contained in settlement agreements narrowly to apply only to the party's individual right to receive letters of administration, not to that party's right to act in a representative capacity for the child or children of the marriage. These cases support our analysis of the settlement agreement here. Therefore, we hold that the waiver of estate claim provision in the marital settlement agreement applies only to respondent's individual right and does not extend to her representative capacity as guardian of the couple's minor child.

Petitioner attaches paramount significance to the phrase, "in any form," in the estate claim waiver provision. of the marital settlement agreement. Petitioner asserts that this precludes respondent from applying for letters of administration as guardian of the couple's child. We disagree. As noted above, when viewing the marital settlement agreement as a whole, it is clear that decedent and respondent intended that the right to apply for letters of administration is waived only if it is rooted in the marital relationship. Thus, because respondent's capacity as guardian of the couple's child was not an incident of her marital relationship with decedent, the waiver does not apply.

We recognize that the "in any form" language is not contained in the marital settlement agreements interpreted in *Nicoll*, *Porrata*, and *Williams*. Our review of those cases, however, convinces us that the language employed in the marital settlement agreements limiting one party's right to act as administrator of the other party's estate was equally as broad and inclusive as the "in any form" language in the marital settlement agreement at issue here. Thus, these cases remain undiminished in their persuasive effect and continue to support our determination here.

Petitioner argues that, under section 9—3 of the Probate Act of 1975 (755 ILCS 5/9—3 (West 1998)), respondent could not have been considered a "surviving spouse." According to petitioner, respondent therefore had no individual right to apply for letters of administration. As a result, the waiver of estate claim provision must have been

designed to apply to some other capacity, such as a representative one, like the guardian of the couple's child. In support, petitioner notes that the parties easily could have inserted a provision to allow them to apply for letters of administration in a representative capacity. Because "[a] strong presumption exists against provisions that could easily have been included in the agreement but were not" (*Sweders*, 296 Ill. App. 3d at 922), petitioner concludes that the parties intended to preclude any involvement in the other's estate. We disagree.

We address petitioner's second point first. The presumption cited by petitioner in support of his position also cuts against him with equal force. A provision specifically precluding respondent or decedent from applying for letters of administration in a representative capacity easily could have been included in the marital settlement agreement. Thus, the agreement's silence, of itself, does not give rise to a presumption that supports petitioner's argument. Further, as our reading of the marital settlement agreement demonstrates that the parties intended to waive rights arising out of the marital relationship, had the parties intended to waive other rights, such as those arising out of other relationships, they easily could have included specific provisions to do so. Thus, the presumption invoked by petitioner actually supports respondent's argument. As she and decedent intended to waive their rights to apply for letters of administration in a capacity arising out of the marital relationship (*i.e.*, individual rights), and because a provision waiving their rights to apply for letters of administration in a representative capacity easily could have been included in the marital settlement agreement, its absence raises a presumption that respondent and decedent did not intend to relinquish those rights.

Petitioner's first point presents a more difficult issue. While petitioner correctly notes that respondent did not have any right under section 9—3 of the Probate Act to nominate an administrator for decedent's estate, that does not change our reading of the marital settlement agreement. As the agreement clearly intended to limit only those rights arising from the marital relationship, we view the waiver of estate claim provision as a safeguard against any unforeseen development whereby respondent would later become eligible somehow to be involved in decedent's estate. Further, as noted above, the agreement's silence as to the limitation of any rights other than those arising out of the marital relationship gives rise to the presumption that only those individual rights were intended to be limited by the terms of the agreement, because the parties could have very easily inserted specific language to cover those other situations. Therefore, we reject petitioner's argument.

Petitioner also argues that, by analogy to beneficial rights in a life

insurance policy, respondent's right to apply for letters of administration as guardian of the couple's minor child was an expectancy that the waiver of estate claim provision was designed to forestall. In support, petitioner cites to *Principal Mutual Life Insurance Co. v. Juntunen*, 189 Ill. App. 3d 224 (1989). That case, however, dealt with the waiver of an interest in a life insurance policy. Here, by contrast, the waiver is of respondent's right to apply for letters of administration in a capacity arising out of her marital relationship with decedent. We find *Juntunen* to be inapposite.

Next, petitioner attempts to attach some testamentary intent to the marital settlement agreement in arguing (again) that the waiver of estate claim provision manifests an intent to preclude respondent from any involvement with decedent's estate. We find this argument unavailing. The intent we discern from the marital settlement agreement was to waive any rights in the estate or administration of the estate that would have arisen from the marital relationship of respondent and decedent. To make the marital settlement agreement stand in the place of a will is improper. Further, the waiver of estate claim provision of the marital settlement agreement was narrowly drawn. We see no reason to allow the marital settlement agreement to stand as a proxy for decedent's testamentary intent, especially where decedent died intestate.

Last, petitioner argues that respondent's application for letters of administration for decedent's estate in a representative capacity is merely a subterfuge to avoid the intent of the marital settlement agreement. We disagree. Both the law and the marital settlement agreement support respondent's action. Petitioner's argument is without merit.

For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

CALLUM and GILLERAN JOHNSON, JJ., concur.